UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DILLON DAVID DONOHOE,

    Plaintiff,

v.                                             Case No.: 2:21-cv-534-SPC-NPM

JOSEPH OSINGA, W. HARDEN,
FNU DIAZ, JAMES PANIAGUA
and KENNETH PENCIC,

    Defendants.
_____/

## **OPINION AND ORDER**

Before the Court are Plaintiff Dillon David Donohoe's Motion for Summary Judgment (Doc. 75) and Defendants' Motion for Summary Judgment (Doc. 77).

## **Background**

Donohoe is a prisoner of the Florida Department of Corrections. Before that, he was detained in Charlotte County Jail. Donohoe sues five Charlotte County deputies over their use of pepper spray, a taser, and a restraint chair on June 11, 2021. The incident was thoroughly documented by surveillance and hand-held cameras. The parties also submit affidavits and incident reports written by the defendants, jail policy documents, and Donohoe's

deposition transcript and jail and medical records. The following facts are unrefuted unless otherwise noted.

On June 11, 2021, jail officials conducted a search of Donohoe's unit, including his cell. Donohoe was uncooperative and erratic, and he refused to submit to handcuffs. The deputies conducting the search believed Donohoe was under the influence of an unknown substance. Deputies restrained and removed Donohoe with a degree of force he concedes was "reasonable" and "necessary." (Doc. 77-4 at 104). Defendants Diaz and Paniagua escorted Donohoe to intake to be searched and assessed by medical staff. The search revealed an empty candy wrapper that tested positive for synthetic marijuana.[1] After a nurse assessed Donohoe, he was placed on direct observation status due to his erratic behavior and concerns he might harm himself. Jail policy requires that inmates on direct observation replace their normal uniforms with suicide gowns.

Donohoe was hostile towards the deputies as they transported him to a direct observation cell in a wheelchair. When they arrived at the cell, Donohoe refused to stand up and move towards the cell door so his clothing could be removed and replaced with a suicide gown. Officers lifted Donohoe out of the

---

[1] Donohoe was later convicted of smuggling contraband into a detention facility.

wheelchair, placed Donohoe into the cell, and attempted to remove his clothes.[2] Donohoe resisted by dropping his weight, clasping his hands together, tensing, and thrashing his limbs. Throughout, Donohoe made threats against the deputies and their families, and he told them he had hepatitis to make them uneasy about handling him. The deputies eventually succeeded in removing Donohoe's clothes and restraints and exited the cell. The defendants claim Donohoe refused to receive a suicide gown and blanket. Donohoe complained in his deposition that the defendants did not provide a gown. The video shows that the deputies had a gown and blanket ready for Donohoe, and that a deputy approached the cell with the gown but dropped it to help restrain Donohoe. Pencic reported in a written narrative of the incident that Donohoe refused deputies' repeated offers of a gown and blanket.

Officers left Donohoe alone in his cell to calm down, but he began to tear the mattress. Defendants Harden and Osinga told Donohoe to submit to restraints by putting his hands through the food slot. Donohoe refused, but he did pass the damaged mattress through the slot. Donohoe then began to flood the cell by clogging the toilet with his hand and repeatedly flushing it. Deputies ordered Donohoe to stop flooding the cell and submit to hand

---

[2] Donohoe stated in his deposition that the deputies did not give him an opportunity to walk into the cell himself and instead lifted him out of the chair "without any comment, without any question, without any order or anything." (Doc. 77-4 at 116). But video shows deputies talking with Donohoe for about 30 seconds before they lift him out of the chair. At that point, Donohoe dropped his weight and left his legs drag on the ground.

3

restraints. Donohoe refused, and the water began to spread to other cells. After Donohoe refused multiple commands, the deputies decided to use pepper spray to gain compliance. At 9:42 p.m., Paniagua sprayed Donohoe through the food flap. Donohoe turned away from the door, the pepper spray hit Donohoe in the upper left shoulder, and Donohoe continued to flood the cell.

Donohoe continued to refuse deputies' repeated commands to stop flooding the unit and submit to restraints, and he continued making threats. The deputies decided to remove Donohoe from the cell by force. They opened the door, and Diaz deployed a taser—the prongs hit Donohoe in his torso and thigh. Paniagua and Pencic attempted to secure Donohoe. He resisted, cutting Paniagua's forearm bad enough to make it bleed. Diaz cycled the taser a second time, and the deputies were able to place Donohoe in restraints. Donohoe continued making threat—like, "You guys are dead" and "Your children will be walking barefoot on the street prostituting themselves before I'm done with you"—and taunting the deputies. (Ex. P at 0:27 – 0:53).

Deputies secured Donohoe in a restraint chair at about 9:50 p.m. and placed a towel over his lap. Due to Donohoe's threats and resistance, the deputies decided to decontaminate Donohoe with a cold, wet towel after he was secured. Donohoe repeatedly demanded a cold-water shower to wash off the pepper spray and asserted that denying him a shower was torture. He also made threats: "I'm gonna murder y'all. Y'all are dead. Y'all are fucking

4

dead…I'm gonna kill you motherfuckers. I'm gonna come into your house and I'm gonna kill you motherfuckers." (Ex. P at 10:15 – 10:30). About a minute later, Donohoe said, "I am no longer being disruptive. I am no longer resisting. I am no longer raising my voice. I am no longer threatening you." (*Id.* at 11:27 – 11:37). Donohoe said he would obey any orders or instructions and again requested a shower. Osinga responded that Donohoe was offered a cold-water shower after he was sprayed but he refused to "cuff up." Donohoe responded, "It doesn't matter." (*Id.* at 12:15 – 12:19).

Donohoe remained in the restraint chair while deputies disconnected the water in a new cell to prevent Donohoe from flooding it. A nurse evaluated Donohoe and found no injuries other than the prong marks from the taser. Donohoe was left restrained in his new cell until about 10:50 p.m. Osinga talked to Donohoe and decided to let him out of the restraint chair. Pencic and Osinga then escorted Donohoe to the shower for decontamination. A nurse again assessed Donohoe and noted no injuries other than redness to his wrists and ankles. After the shower, Donohoe was taken to a clean cell and issued a suicide gown and blanket. Donohoe suffered no lasting injuries, and his taser wounds healed without any complications.

**Legal Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is

5

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson Cty. Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (1994).

Donohoe files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right

6

secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

Donohoe's Second Amended Complaint, construed liberally, accuses the defendants of using excessive force throughout the June 11, 2021 incident, unnecessarily exposing his genitals to female staff, and exhibiting deliberate indifference to serious medical needs created by their uses of force. Donohoe's motion for summary judgment is narrower. He argues the defendants used excessive force by tasing him and exhibited deliberate indifference by delaying a decontamination shower. Defendants' motion for summary judgment addresses each of the claims in Donohoe's Second Amended Complaint, and Donohoe did not file a response.

    A. <u>Excessive force</u>

Because Donohoe was a pretrial detainee at the time of this action arose, the Court analyzes his excessive-force claim under the Fourteenth Amendment, not the Eighth Amendment. To succeed on an excessive-force claim, a "pretrial detainee must show only that the force purposely or

7

knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). The objective reasonableness of a use of force "tuns on the facts and circumstances of each particular case." *Id., at 397* (internal quotation marks and citation removed). Officials may not use force to punish pretrial detainees because they have not been adjudicated guilty of a crime. But officials may use force when necessary to achieve a legitimate governmental interest, like the need "to preserve internal order and discipline and to maintain institutional security." *Id.*

When evaluating the reasonableness of a use of force, courts may consider factors like "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

The evidence presented in this case demonstrates that the defendants used an objectively reasonable amount of force on Donohoe. Throughout the evening of June 11, 2021, deputies attempted to deescalate the situation. Donohoe consistently refused the deputies' orders, physically resisted them, and made explicit threats of violence. The deputies gave Donohoe repeated opportunities to cease his disruptive conduct and submit to restraints before using force.

8

Deputies first used force because an erratic Donohoe was uncooperative during a search of his unit, and Donohoe acknowledged this use of force was reasonable. The defendants used force again because Donohoe physically resisted their attempt to place him in a direct observation cell and replace his uniform with a suicide gown. The video shows that the defendants did not act violently and used an appropriate amount of force to get Donohoe into the cell and out of the restraints and uniform. It is also clear that no force would have been necessary had Donohoe cooperated.

When Donohoe began deliberately flooding the unit, the deputies attempted to avoid a use of force by ordering Donohoe to stop his disruptive conduct and submit to restraints. The defendants were entitled to use force to quell the disturbance, and they took a measured approach. They first warned Donohoe they would use pepper spray to if he did not submit to restraints. When Donohoe continued flooding the cell, a deputy sprayed a short burst of pepper spray. It was ineffective, and Donohoe continued to ignore the deputies' demands.

The defendants' decision to forcibly remove Donohoe from the cell at that point was reasonable, as was the use of a taser. Given Donohoe's threats, disregard of verbal orders, and prior physical resistance, a reasonable officer could anticipate that Donohoe would resist them again. The reasonable use of a taser on a noncompliant detainee is not excessive force. *See Ireland v.*

*Prummell*, 53 F.4th 1274, 1300 (11th Cir. 2022). Diaz did not deploy the taser excessively. Donohoe continued resisting after the first cycle—to the point that he caused one deputy to bleed—so Diaz cycled the taser again. That was enough for the other deputies to apply restraints, and the defendants did not apply any additional, unnecessary force.

The fact that Donohoe suffered no serious or lasting injuries is further evidence that the defendants' used a reasonable amount of force throughout the incident. Medical staff assessed him at least three times that evening. Donohoe's only injuries were redness around his wrists and ankles and wounds from the taser prongs, which healed without incident.

Donohoe fails to show that his excessive force claim presents a genuine issue for trial. All evidence before the Court shows that the defendants applied an objectively reasonable amount of force. The Court will dismiss this claim.

B. Deliberate indifference

Donohoe's deliberate indifference claim also arises under the Fourteenth Amendment. "Deliberate indifference claims made under the Fourteenth Amendment are held to the same standards as deliberate indifference claims made under the Eighth Amendment." *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1304-05 (11th Cir. 2023).

In *Estelle v. Gamble*, the Supreme Court established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary

and wanton infliction of pain,' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976). "To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: '(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.'" *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)).

In the Eleventh Circuit, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Shaw v. Allen*, 701 F. App'x 891, 893 (11th Cir. 2017) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307. "In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted). "A defendant is deliberately indifferent to a serious medical need when he or she (1) has subjective knowledge of a risk of serious harm; (2) disregards that risk; and (3) acts with more than gross negligence." *Myrick*, 69 F.4th at 1305.

Donohoe fails to demonstrate he had a serious medical need or that any defendant acted with deliberate indifference. A nurse assessed Donohoe three

11

times during the incident and found only minor, superficial injuries—wounds from the taser prongs and redness on Donohoe's wrists and ankles. She did not recommend medical treatment, and Donohoe healed without complications.

Donohoe's primary complaint here is the defendants' refusal to provide a decontamination shower until about an hour after he was hit with pepper spray. The evidence does not suggest the pepper spray created a serious medical need. It hit Donohoe in the shoulder, not the face, and it did not have any effect on his behavior. Donohoe did not request a decontamination shower at that point or comply with the deputies' demands to "cuff up." And while Donohoe demanded a shower after the defendants put him in the restraint chair, he did not appear to be in distress, and a nurse found no need for immediate medical care.

Nor can Donohoe show the defendants acted with deliberate indifference. After securing him in the restraint chair, a deputy attempted to alleviate the effects of pepper spray by applying a cold, wet cloth. Donohoe contends the defendants should have known this to be an ineffective method of decontamination, but that suggests negligence at worst, not deliberate indifference. The defendants then had a nurse assess Donohoe, and she found no need for immediate medical care. These facts, combined with Donohoe's threats of violence, physical resistance, and deliberately disruptive conduct

justify the defendants' decision to leave Donohoe restrained until they were confident he had calmed down. Donohoe seems to suggest the defendants should have released him as soon as he announced he was no longer being disruptive, but Donohoe had threatened to murder the defendants less than a minute earlier. It was reasonable to keep Donohoe restrained at that point.

Finally, Donohoe cannot establish the causation element. Donohoe got his shower about an hour after being sprayed. There is no evidence the delay worsened his condition or otherwise caused him any serious harm. The Court will grant the defendants summary judgment on this claim.

c. Violation of privacy

The defendants and the Court construe a third claim from Donohoe's complaint—that the defendants violated his privacy by exposing his genitals to female guards. The defendants argue the exposure was a consequence of Donohoe's actions, as they offered him a suicide gown and covered his genitals while he was restrained. Donohoe does not address this claim on summary judgment, either in his own motion or in response to the defendants'. Donohoe has thus abandoned this claim. *See Resolution Trust Corp v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)* ("the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").

Accordingly, it is now

13

**ORDERED:**

Plaintiff Dillon David Donohoe's Motion for Summary Judgment (Doc. 75) is **DENIED** and Defendants' Motion for Summary Judgment (Doc. 77) is **GRANTED**. This action is **DISMISSED**. The Clerk is **DIRECTED** to terminate any pending deadlines and motions, enter judgment in favor of Defendants, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on June 28, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record

14